UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Joseph Dube

        v.                          Civil No. 1:10-cv-179-JL
                                    Opinion No. 2011 DNH 031

Michael J. Astrue, Commissioner,
Social Security Administration


**MEMORANDUM ORDER**

     This is an appeal from the denial of a claimant's
application for Social Security Disability Benefits.  See 42
U.S.C. § 405(g).  The claimant, Joseph Dube, contends that the
administrative law judge ("ALJ") incorrectly found that Dube was
not disabled because he retained the residual functional capacity
("RFC") to perform light duty work, see Admin. R. 12;[1] see
generally, 20 C.F.R. § 404.1567(b), and that given his age,
education, and work experience, there were a significant number
of job opportunities available to him.  See id. §
404.1520(a)(4)(v); pt. 404, subpt. P, App. 2, § 202.  Dube
contends that:

_____

     [1]The court will reference the administrative record ("Admin.
R.") to the extent that it recites facts outside the parties'
joint statement or directly quotes documents in the record.  Cf.
Lalime v. Astrue, No. 08-cv-196-PB, 2009 WL 995575, at *1 (D.N.H.
Apr. 14, 2009).

(1) the ALJ failed to discuss relevant medical evidence regarding Dube's mental health impairments contradicting the ALJ's RFC assessment, see id. § 1527;

(2) the ALJ ignored a finding by the New Hampshire Department of Health and Human Services that Dube was disabled (for purposes of state disability benefits) due to his mental impairments, see generally N.H. Rev. Stat. Ann. §§ 167:3-j, 167:6, VI;

(3) the ALJ's assessment of the effect that Dube's mental health impairments had on his ability to work was unsupported by the evidence, and therefore the ALJ did not satisfy his burden of proof at Step Five of the disability assessment, see generally, 20 C.F.R. § 404.1520(a)(4)(v);[2]

(4) given Dube's mental impairments, the ALJ improperly relied on the Medical-Vocational Guidelines ("the Grid"), see generally id. §§ 404.1520(a)(4)(v), pt. 404, subpt. P, App. 2; 404.1560(c)(2), to conclude that Dube was not disabled.

The Commissioner moves for an order affirming the ALJ's decision, asserting that it was supported by substantial evidence in the record.[3]  This court has jurisdiction under 42 U.S.C. § 405(g).  After review of the administrative record, the court

_____

[2]See infra., Part III.

[3]The Commissioner admits that the ALJ erred when he concluded that Dube met the insured status requirements of the Social Security Act through September 30, 1992.  See Admin R. 9; see generally, 20 C.F.R. § 404.101.  Both parties agree that this was a typographical error, and that Dube meets the insured status requirements through December 31, 2011.  See Cl.'s Am. Compl. ¶ 14; Def.'s Answer to Am. Compl. ¶ 14.

grants Dube's motion, denies the Commissioner's motion, and remands the case.

## I.    **APPLICABLE LEGAL STANDARD**

The court's review under Section 405(g) is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  If the ALJ's factual findings are supported by substantial evidence in the record, they are conclusive, even if the Court does not agree with the ALJ's decision and other evidence supports a contrary conclusion. See Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).  The ALJ is responsible for determining issues of credibility, resolving conflicting evidence, and drawing inferences from the evidence in the record.  See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Pires v. Astrue, 553 F. Supp. 2d 15, 21 (D. Mass. 2008) ("resolution of conflicts in the evidence or questions of credibility is outside the court's purview, and thus where the record supports more than one outcome, the ALJ's view

prevails").  The ALJ's findings are not conclusive, however, if
they were "derived by ignoring evidence, misapplying the law, or
judging matters entrusted to experts."  Nguyen, 172 F.3d at 35.
If the ALJ made a legal or factual error, the decision may be
reversed and remanded to consider new, material evidence, or to
apply the correct legal standard.  Manso-Pizarro v. Sec'y of
Health & Human Servs., 76 F.3d 15, 16, 19 (1st Cir. 1996); see 42
U.S.C. § 405(g).

## II.  BACKGROUND

The parties submitted a Joint Statement of Material Facts
(document no. 12) which is part of the court's record.  See LR
9.1(d).  The facts included in that statement are outlined here
to the extent necessary to provide adequate background for the
analysis that follows.  Because the court is reversing the ALJ's
order on the basis that the ALJ improperly ignored relevant
psychiatric evidence, the recitation below will focus on evidence
of Dube's psychological, not physical impairments.

### A. Procedural history

During the summer of 2007, Dube, then 41 years old, applied
for disability benefits and supplemental security income benefits
claiming he was disabled since July 15, 2006 due to debilitating
knee pain resulting from torn cartilage and arthritis.  He

claimed that he was in constant pain, couldn't stand or walk for long periods of time, and needed to use "a crutch."  Admin. R. 106.  The Social Security Administration denied Dube's claims in September 2007, determining that his impairment was "not severe enough by SSA rules" to be considered disabled, and that he was capable of performing light duty work.  Id. at 37.  In his appeal of that denial, Dube continued to claim he experienced debilitating knee pain, and additionally claimed he suffered from depression beginning in November 2007.  Id. at 114.  On June 26, 2008, a Federal reviewing official, see 20 C.F.R. § 405.1(b)(2), denied Dube's claim after specifically considering both his chronic knee pain and depression.  Admin. R. 42-44.  The review official concluded that Dube's "condition is not severe enough to keep you from working" and denied his applications for benefits.  Id. at 44.  Dube appealed that decision to the ALJ, see 20 C.F.R. § 405.1(b)(3), who, after a hearing, affirmed the denial of his claim.  Admin. R. 7-15.  The ALJ concluded that although Dube's knee pain and depression were severe impairments,[4] see 20 C.F.R. § 404.1520(a)(4)(ii), he retained the residual functional capacity to perform light work "allowing for the postural functions occasionally."  Admin. R. 12.  The ALJ concluded that

---

[4]The ALJ also concluded that Dube suffered from obesity and cannabis dependence.

Dube's impairments precluded him from returning to his former work as a lumber inspector, see 20 C.F.R. § 404.1520(a)(4)(iv), but given his residual functional capacity, age, and experience, he was capable of performing in a significant number of jobs in the national economy and was not disabled.  Admin. R. 12-14; see generally 20 C.F.R. § 404.1520(a)(4)(v), pt. 404, subpt. P, App. 2, §202.  Dube filed a request to review the ALJ's decision, however, the Decision Review Board, see generally id. § 405.401, did not complete its review in a timely fashion, see id. § 405.415, rendering the ALJ's decision the final decision of the Commissioner.  See id.  This appeal followed.

**B. Medical and work history evidence before the ALJ**

Although most of the evidence in the administrative file pertains to the functional limitations arising from Dube's knee pain, the issues raised by Dube involve the limiting effects of his depression.  Therefore, the court recites only that evidence relevant to Dube's appeal, namely the state of his mental health.

Dube underwent a psychological evaluation conducted by Dr. Douglas B. Southworth in November 2007.[5]  Dr. Southworth

---

[5]Dr. Southworth's notes in the record consist only of a "Psychiatric Evaluation" form provided by the New Hampshire Department of Health and Medicaid Administration.  Admin. R. 207-210.

diagnosed Dube with a "[d]ysthymic disorder chronic[6] [and]
current major depression, [first] episode, moderate." Admin. R.
210.  He noted that Dube suffered from knee problems, and that he
had "secondary depression complicated by an anger management
problem and current marital separation." Id. at 208.[7]

Overall, Dr. Southworth's evaluation presents a somewhat
unclear picture of the state of Dube's mental health.  Dr.
Southworth noted that Dube appeared "well groomed, pleasant,
[and] cooperative," and his speech was clear and normal in pace
and tone.  Id. at 208.  Dube had good recall, and although Dube's
affect was "mildly blunted," he exhibited "[n]o psychotic or
manic symptoms." Id.  Functionally, Dr. Southworth concluded
that Dube had a "marked" functional loss in performance of his
daily activities due to "[p]ersistent sleep disturbance [and]
current[] homeless[ness]." Id. at 209.  Dr. Southworth predicted

---

[6] A dysthymic disorder is "a mood disorder characterized by
depressed feeling (sad, blue, low), loss of interest or pleasure
in one's usual activities, and by at least some of the following:
altered appetite, disturbed sleep patterns, lack of energy, low
self esteem, poor concentration or decision-making skills, and
feelings of hopelessness.  Symptoms have persisted for more than
two years but are not severe enough to meet the criteria for
major depressive disorder." Dorland's Illustrated Medical
Dictionary, 556 (31st ed. 2007).

[7] Dr. Southworth's report not only ties Dube's depression to
his knee problems, but views his functional limitations and
resolution of his mental health issues as intimately connected to
how Dube's "orthopedic" issues are addressed.  Id. at 208-210.

that Dube would have a constant and severe limitation of his work related/task performance "due to [Dube's] orthopedic problem [although] [h]is concentration [and] intelligence appear good." Id. Dr. Southworth opined that he "expect[ed] repeated" functional loss due to work related stress, but explained that it is "[u]nclear because [Dube] has not yet been placed in any training or trial job by [vocational rehabilitation services]. He will likely need to make major changes from previous employment in [the] timber industry." Id.

Although Dr. Southworth predicted that the probability that Dube could return to gainful employment was "[f]air," he stated that he "expect[ed] some challenges" and that Dube's general level of function would be "[m]arkedly [l]imited" because his "knee function cannot be corrected." Id. at 210. In sum, he anticipated that Dube would not be able to return to work for three to four years, noting that a "combination of orthopedic and psychiatric factors should be considered in a disability determination." Id. Dr. Southworth recommended that Dube have a further psychiatric evaluation to determine a course of therapeutic treatment and medication. Id.

In January 2008, the New Hampshire Department of Health and Human Services concluded that Dube was eligible for state disability benefits based on both his history of knee problems

8

and mental health impairments noted by Dr. Southworth.

Significantly, Dube's disability evaluation specifically noted

Dr. Southworth's finding that Dube would be unable to return to

work for three to four years in concluding that he was eligible

for benefits.  Id. at 280-284.

Later that month, complaining of disturbed sleep and

appetite, feelings of sadness, hopelessness and helplessness,

Dube sought mental health services from the Northern Human

Services Mental Health Center.  As a result of Dube's anger

management problems, Dube's wife and son left him, and Dube

needed to move in with his mother and brother.  Id. at 211.

Dube was diagnosed with dysthymic disorder and cannabis

dependence, with a Global Assessment of Functioning Scale score

("GAF") of 50.[8]  Admin. R. 212.  Although Dube's ability to cope

---

[8]The Global Assessment Functioning Scale considers
"psychological, social, and occupational functioning on a
hypothetical continuum of mental health-illness."  Am.
Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental
Disorders 34 (4th ed., text revision 2001).  The scale is divided
into 10 ranges of function between 1 and 100.  Id. at 32.  For
example, a score between 91-100 indicates "[s]uperior functioning
in a wide range of activities . . . [n]o symptoms," while a score
between 1-10 indicates "[p]ersistent danger of severely hurting
self or others . . . OR persistent inability to maintain minimal
personal hygiene OR serious suicidal act with clear expectation
of death."  Id. at 34.  The scores are used "for reporting the
clinician's judgment of the individual's overall level of
functioning, . . . [to] plan[] treatment and measure[] its
impact, and in predicting outcome."  Id. at 32.  Scores usually

and utilize interpersonal skills under stress suffered from "[n]oticeable [d]isruption," and Dube needed "guidance" in performing daily activities, id. at 215, the assessment also observed that Dube had good interpersonal skills, money management skills, judgment, cognitive ability, and a mastery of reading, writing and arithmetic.  Id. at 212.  The assessment also noted that Dube was able to take care of himself and had a sense of humor.  Id.

Dube attended multiple therapy sessions with Robert D. Hamm, MSW, at Northern Human Services Mental Health Center from January through April 2008.  Although he exhibited a depressed mood, he appeared to be making progress during the course of treatment. Id. at 217-224, 231-244.  Dube was discharged from care on June 5.  The discharge note lists the reason as "[v]oluntary by [c]onsumer."  Id.

An administrative hearing was held on October 14, 2009 during which Dube testified about his limitations.  Id. at 20-33. Although the hearing focused primarily on Dube's knee issues,

are based, however, on the current "level of functioning."  Id. at 33.

A GAF score of 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id.

when asked about any other limiting conditions, Dube replied,
"I've become depressed because I can't do anything anymore that I
used to do."  Id. at 25.  Dube described the limiting effect of
his depression, stating:

> I'm not as social as I used to be.  I don't visit my
> friends as much — you know, some of my friends I don't
> see at all anymore.  Sometimes I just don't really want
> to get out of bed.  I mainly, like I said, I really
> miss the hiking and everything I used to do.  I really
> miss that a lot . . . .

Id. at 31-32.

## D. The ALJ's decision

A month later, the ALJ issued an order denying Dube's
request for benefits.  He found that Dube was severely impaired
due to obesity, degenerative joint disease, depression, and
cannabis dependence.  Id. at 10; see generally 20 C.F.R. §
404.1520(c).  The ALJ denied benefits, however, because he
concluded that despite his impairments, Dube had the residual
functional capacity to perform light work, limited only by the
ability to perform "postural functions" occasionally.  Admin. R.
12; see generally, 20 C.F.R. § 1567(b).  The ALJ concluded that
although Dube's impairments rendered him unable to perform his
prior work as a lumber inspector, see generally 20 C.F.R. §
404.1520(a)(4)(iv), given Dube's age, education and work
experience, there were significant jobs in the national economy

available to him, and therefore, Dube was not disabled.  See id.
§ 404.1520(a)(4)(v); Admin. R. 13-14; see generally, Seavey v.
Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (explaining "the Grid").

With respect to Dube's depression, the ALJ found it to
constitute a severe impairment, see generally, 20 C.F.R. §
404.1520(a)(4)(iii), noting:

> [t]he medical record notes treatment for depression in
> 2007 and 2008 and suggests that his condition was
> secondary to marital and employment problems.  When he
> was evaluated in January 2008, he was diagnosed with
> dysthemic disorder and cannabis dependence in
> early/partial remission, with a GAF of 50.  Although he
> endorsed symptoms of depression, which included
> insomnia, poor appetite, hopelessness, and anger, he
> also appeared well-groomed and well-oriented, with an
> appropriate affect, reality based and intact thoughts,
> and calm behavior.  In fact, it appears that in March
> 2008 his depressive symptoms had improved, and by June
> 2008 he was discharged at his own request . . . .

Admin R. 10.  The ALJ concluded however, that the impairment was
not disabling, because although Dube alleged "that he suffers
from disabling . . . depression . . . there is no valid or
consistent objective evidence of this . . . .  Moreover, his
depression has improved such that he stopped counseling by his
own volition."[9]  Id. at 13.

---

[9]Dube's reasons for stopping treatment are unclear.  Staff
at Northern Human Services Mental Health Center merely checked
the "Voluntary by Consumer" box under the heading "Reason for
Discharge."  Id. at 245.  Notably, the mental health provider did
not choose "No need for further Treatment Services" from a
potential checklist of reasons in the discharge form.  Id.

III. **ANALYSIS**

A five-step process is used to evaluate an application for social security benefits.  20 C.F.R. § 404.1520(a)(4).  The applicant bears the burden through the first four steps to show that he is disabled.[10]  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Commissioner bears the burden of showing that a claimant has the residual functional capacity to perform other work that may exist in the national economy.  Id.; see also 20 C.F.R. § 404.1520(a)(4)(v); Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  The ALJ's conclusions at steps four and five are informed by his assessment of a claimant's residual functional capacity ("RFC"), which is a description of the kind of work that the claimant is able to perform despite his impairments.  20 C.F.R. §§ 404.1520, 404.1545.

---

[10]Specifically, a claimant must show that:  (1) he is not engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment meets or equals a specific impairment listed in the Social Security regulations; or (4) the impairment prevents or prevented him from performing past relevant work.  Id.  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

Dube asserts that the ALJ made multiple errors regarding the effect of Dube's mental health limitations when the ALJ concluded, at the fifth step of the evaluation, that although Dube was impaired, he possessed the RFC to perform at the light work capacity.  The court concludes that because the ALJ did not address contradictory aspects of the medical opinion offered by Dr. Southworth in his evaluation of Dube's RFC, the decision of the ALJ should be reversed and remanded.

## A. Mental health evidence

Dube contends that the ALJ erred in failing to discuss psychiatric medical evidence contrary to the determination that Dube was capable of light work.  In particular, Dube asserts that the ALJ failed to address Dr. Southworth's evaluation and the "Intake Assessment" from Northern Human Services.[11]  The

---

[11]Dube casts the "Intake Assessment" as a "psychiatric evaluation."  As the Commissioner correctly points out, the record indicates that this evaluation was completed by a social worker, not a psychiatrist.  Admin. R. 216.  Social workers are not "medical sources," see Anderson v. Astrue, 682 F. Supp. 2d 89, 96 (D. Mass. 2010); see generally, 20 C.F.R. § 404.1513(a)(1)-(5), and therefore do not generate a "medical opinion" that must be considered by an ALJ.  See Evans v. Barnhart, No. 02-459-M, 2003 WL 22871698, at *5-*6 (D.N.H. Dec. 4, 2003); see generally 20 C.F.R. §§ 404.1527(a)(2), 404.1513(a)(1)-(5), (d)(1).  Rather, social worker opinions are categorized as "other sources" of evidence.  See generally, id. § 404.1513(d).  In this district, an ALJ "may" consider other sources, but is under no obligation to do so.  See Evans, 2003 WL

14

Commissioner replies that the ALJ did not err because although he did not address Dr. Southworth's opinion, the ALJ "incorporated many of the relevant conclusions in Dr. Southworth's opinion."[12] Def.'s Br. at 6.  It was error for the ALJ to overlook Dr. Southworth's opinion and therefore, the court reverses the ALJ's decision.

---

22871698 at *6.  An ALJ is not obliged to discuss every piece of relevant evidence, so long as his conclusion is "supported by citations to substantial medical evidence . . . and the unaddressed evidence was either cumulative . . . or otherwise failed to support the claimant's position." Lord v. Apfel, 114 F. Supp. 2d 3, 13 (D.N.H. 2000).  Special consideration must be given to contrary evidence "[f]or a reviewing court to be satisfied that an ALJ's decision was supported by substantial evidence, that decision must take into account whatever in the record fairly detracts from its weight." Id. at 14 (quotations omitted).  In this case, the ALJ specifically discussed the Intake Assessment when he determined that Dube's impairments included depression. See id.  In doing so, the ALJ noted both limiting symptoms, and those supporting an ability to work. Admin. R. at 10.  Although the ALJ did not discuss the assessment in detail later when evaluating Dube's functional capacity, id. at 13, he did reference his earlier discussion of the assessment, id., and was under no obligation to rehash it thoroughly. See Evans, 2003 WL 22871698 at *6; Lord, 114 F. Supp. 2d at 13–14; cf. Anderson, 682 F. Supp. 2d at 96 (because social worker was not a "medical source . . . . use of his testimony or the weight . . . assigned thereto was entirely discretionary").

[12]Notably, however, to the extent that Dr. Southworth's conclusion were "incorporated," they were attributed to the Intake Assessment completed by the staff at Northern Human Services.  Admin. R. 10.

"[T]he First Circuit has held that an ALJ's written decision need not directly address every piece of evidence in the administrative record" if it is cumulative of evidence already discussed by the ALJ or fails to support the claimant's position. Lord, 114 F. Supp. 2d at 13.  "At the same time, the First Circuit and district courts within this circuit have held that an ALJ may not simply ignore relevant evidence,[13] especially when that evidence supports a claimant's cause."  Id. (citing cases). While an ALJ, not the reviewing court, resolves conflicts in the evidence, an ALJ may not adopt one view of the evidence, "without addressing the underlying conflict."  Nguyen v. Callahan, 997 F. Supp. 179, 182 (D. Mass. 1998)(quotations omitted).

Moreover, a court must be able to determine whether the ALJ considered the contrary evidence and chose to discredit it, or whether it was "simply ignored."  Lord, 114 F. Supp. 2d at 14. "For a reviewing court to be satisfied that an ALJ's decision was supported by substantial evidence, that decision must take into account whatever in the record fairly detracts from its weight." Id. (quotations omitted).

---

[13]Dr. Southworth was not a treating physician, see 20 C.F.R. § 404.1502, and as such, the ALJ did not need to consider whether his opinion should be given controlling weight.  See Guyton v. Apfel, 20 F. Supp. 2d 156, 167 (D. Mass. 1998) (explaining two step analysis to determine if treating source opinion is afforded "controlling weight").

The Commissioner asserts that many of Dr. Southworth's conclusions were similar to those specifically attributed to Northern Services, and thus may be considered "cumulative" and unnecessary to include in the order.  See Lord, 114 F. Supp. 2d at 13.  However, these "cumulative" findings generally encompass facts supportive of the ALJ's conclusion that Dube was not disabled.[14]  The problem, however, is that the ALJ ignored findings by Dr. Southworth regarding Dube's functionality that contradict the ALJ's conclusion.  Cf. Brunel v. Barnhardt, No. Civ.00-402-B, 2002 WL 24311, at *9 (D.N.H. Jan. 7, 2002) (ALJ cannot parse medical evidence, accepting favorable evidence and ignoring unfavorable evidence "without offering a principled reason").  Specifically, Dr. Southworth concluded that although the prospect that Dube could return to gainful employment was "fair," he also opined that:  (1) Dube's general level of function would be "markedly limited," (2) there would be repeated functional loss, and (3) he expected that Dube would be unable to work for three to four years.  Admin. R. at 209-210.  It was

---

[14]For example, both the Northern Human Services evaluation and Dr. Southworth concluded that Dube was "well-groomed, pleasant, cooperative," Admin. R. 208, 211, and appeared "calm and alert," id. at 211, and "clear," id. at 208.  Although depressed, Dube did not exhibit any "psychotic or manic symptoms," id. at 208, and exhibited "appropriate, reality based" affect.  Id. at 211.

error for the ALJ not to properly consider this contradictory
evidence.  Cf. Evans, 2003 WL 22871698, at *6 (no error where ALJ
properly recognized inconsistent psychological assessment and
explained why it was discounted); Nguyen, 997 F. Supp. at 182
(error for ALJ to fail to mention contrary psychological
assessment).

> Because State agency medical and psychological
> consultants and other program physicians and
> psychologists are experts in the Social Security
> disability programs, the rules in 20 C.F.R.
> 404.1527(f) and 416.927(f) require administrative law
> judges . . . to consider their findings of fact about
> the nature and severity of an individual's
> impairment(s) as opinions of nonexamining physicians
> and psychologists.  Administrative law judges . . . are
> not bound by findings made by State agency or other
> program physicians and psychologists, but they may not
> ignore these opinions and must explain the weight given
> to the opinions in their decisions.

SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996); see also SSR 96-
5p, 1996 WL 374183, at *6 (July 2, 1996).  Dr. Southworth's
conclusion that Dube would be unable to work for many years is
relevant to Dube's ability to "engage in substantial gainful
activity."  42 U.S.C. § 423 (d)(1)(A).  The ALJ was obligated to
recognize the contradiction and state his reasons for deciding
not to accept it.[15]  Failure to do so was error.  Cf. Adie v.

---

[15]In the motion before this court, counsel for the
Commissioner ably posits numerous reasons "[l]ending support to
the ALJ's disregard of Dr. Southworth's limitational
assessments."  Def.'s Br. 6.  It is the responsibility of the ALJ

Comm'r, Soc. Sec. Admin., 941 F. Supp. 261, 268 (D.N.H. 1996)

(inadequate consideration of medical evidence potentially

corroborating claimant and "selective" consideration of treating

physician opinion was error).  The decision of the ALJ is

reversed and the case is remanded for further proceedings in

accordance with this order.

---

to undertake that analysis in the first instance, not the court.
The court recognizes that it is possible that on remand, the
Commissioner may once again conclude that Dube was not disabled
during the relevant time period.  "If he reaches such a
conclusion, however, he must do so in a manner that demonstrates
that all the relevant evidence in the record was considered in
accordance with applicable legal standards." Lord, 114 F. Supp.
2d at 16-17.

    The court also notes that the Federal review official's
order denying benefits specifically gave lesser weight to the
medical opinion of Dr. Douglas Southworth.  Admin. R. 43.  In his
denial, the review official found that Dr. Southworth's "opinion
as to your physical limitations to be contrary to other more
qualified medical experts . . . ." Id.  Although the ALJ's
subsequent treatment of Dr. Southworth's opinion forms the basis
of Dube's appeal before this court, neither party alerted the
court to the review officer's finding, nor the ALJ's statement
that he "agrees with all of the substantive findings the FedRO
made on these claims." Id. at 14.  The court cannot determine
from the record whether the ALJ considered Dr. Southworth's
contradictory opinions however, because the review official's
conclusions are couched in physical, not psychological terms.
Moreover, the court is uncomfortable resting its determination on
a basis neither argued nor even addressed by either party.

**B. Other issues on remand**

Dube contends that the ALJ erred in ignoring the determination by the New Hampshire Department of Health and Human Services that Dube was disabled for purposes of state disability benefits. "[A] determination made by another agency [e.g. Workers' Compensation, the Department of Veterans Affairs, or an insurance company] that you are disabled . . . is not binding on [the Commissioner]." SSR 06-3P, 2006 WL 2329939, at *6 (August 9, 2006). Therefore, the ALJ was not required to award benefits simply because Dube was found to be disabled by a state evaluator.[16]

_____

[16]To the extent that Dube argues that the award of state benefits was relevant evidence that was impermissibly ignored, the court finds no error. A state determination is not, in and of itself, evidence of disability. It is a determination of disability based on specific state rules and relevant evidence in the state record regarding a claimant's functionality. Id. at *7.

> Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental . . . agencies. In addition, because other agencies may apply different rules and standards . . . for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases . . . .

Dube also contends that it was error for the ALJ to consult
the Grid to determine at Step Five whether he was disabled.  The
Grid is a device appropriately used by the Commissioner at Step
Five to carry his burden of showing that there are jobs available
in the national economy given the claimant's limitations.  See,
e.g., Guyton, 20 F. Supp. 2d at 162 (citing cases).  The Grid
allows the Commissioner "to satisfy this burden in a streamlined
fashion" where a claimant's limitations affect the strength
requirements of a job.  Ortiz v. Sec'y of Health & Human Servs.,
890 F.2d 520, 524 (1st Cir. 1989) (quotations omitted).  "In
cases where a nonexertional impairment significantly affects [a]
claimant's ability to perform the full range of jobs he is
otherwise exertionally capable of performing, the Secretary must
carry his burden of proving the availability of jobs in the
national economy by other means, typically through the use of a

---

Id.  Although it may be good practice to explain why contrary
state agency determinations were not followed, merely ignoring an
administrative conclusion is not error per se.  See Evans, 2003
WL 22871698, at *6 (where language is permissive, not mandatory,
it is not clear that the ALJ is obligated to take action); cf.
Boulet v. Cellucci, 107 F. Supp. 2d 61, 73 (D. Mass. 2000).
Rather, it is more troubling if relevant evidence of disability
forming the basis of the state finding is in the record and
ignored.  See Bickford v. Barnhart, 242 F. Supp. 2d 39, 42 (D.
Me. 2002) (error to ignore medical evidence in Veterans
Administration records); cf. Lord, 114 F. Supp. 2d at 13.

vocational expert." Id. (quotations and citations omitted).  An
ALJ may rely on the Grid, however, if the non-strength
impairments "impose no significant restriction on the range of
work" a claimant can perform or only reduces the occupational
base "marginally." Id. "Special caution is required in
evaluating the effects of mental illness when relying on the
Grid," Larocque v. Barnhart, 468 F. Supp. 2d 283, 289 (D.N.H.
2006), but use of the Grid is not precluded by the presence of
low level personality disorders. Ortiz, 890 F.2d at 524, n.3.

Dube contends that use of the Grid was inappropriate because
"the psychiatric evaluations in the record indicate Mr. Dube's
ability to perform light work would be significantly limited by
his mental impairments, particularly due to his reaction to work
related stress." Cl.'s Br. 12.  The Commissioner replies that
such limitations are minimal, claiming there was "a dearth of
evidence of an intolerance for stress.  Indeed, Dr. Southworth
. . . said that [Dube's] reaction to stress was unclear . . . ."
Def.'s Br. 12.

The ALJ, however, only briefly addressed Dube's mental
impairments when relying on "the Grid," stating, in a conclusory
fashion, "the additional limitations have little or no effect on
the occupational base of unskilled work." Admin. R. 14.  On this
record, it is not apparent to the court whether the ALJ used

"special caution" in determining whether Dube's mental limitations precluded use of the Grid.  Cf. Larocque, 468 F. Supp. 2d at 289-90 (finding error where "ALJ did not explain why an individualized assessment was not needed here and ignored important limitations in [claimant's] ability to work").  The court need not decide whether the ALJ's lack of specificity was error, however, because it is remanding the case on other grounds to the ALJ who will issue a new decision.  Thus, it is unnecessary to determine whether Dube's mental impairments were significant enough to make use of the Grid inappropriate or whether the ALJ's reasons for using the Grid were insufficient.[17] Cf. Costa v. Astrue, No. 1:09-cv-441-JL, 2010 WL 4365868, at *10 (court did not decide whether ALJ erred because case was being remanded on other grounds, but concluded that at most, ALJ's order was barely sufficient).

**IV.   CONCLUSION**

     Pursuant to sentence four of 42 U.S.C. § 405(g), Dube's motion to reverse and remand the Commissioner's decision

---

     [17]Similarly, the court need not address Dube's remaining claim that the Commissioner failed to carry his burden of proof at Step Five of the decision making process.  On remand, the ALJ will reconsider the evidence and issue a new ruling, rendering review of the sufficiency of the ALJ's process is unnecessary at this time.  Cf. Lord, 114 F. Supp. 2d at 12, n.14.

(document no. 10) is granted.  The Commissioner's motion to affirm the decision (document no. 11) is denied.  The Clerk of Court is directed to enter judgment in accordance with this order and close the case.


**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  February 24, 2011

cc:  Michael G. Perez, Esq.
     Gretchen Leah Witt, Esq.